E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2426
     Facsimile:  (213) 894-0142
     E-mail:  Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>REAL PROPERTY LOCATED IN LOS ANGELES CALIFORNIA<br><br>      Defendant. | Case No. CV 22-4950-SVW<br><br>NOTICE OF MOTION AND MOTION TO STRIKE CLAIMS PURSUANT TO RULE G(8)(c) OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATION OF AUSA DAN BOYLE; DECLARATION OF SA GEFFREY CLARK<br><br>HEARING DATE: December 5, 2022<br>LOCATION: Courtroom of the Hon. Stephen R. Wilson |

     PLEASE TAKE NOTICE that on December 5, 2022 at 1:30 p.m.,
or as soon thereafter as the matter may be heard, in the
courtroom of the Honorable Stephen V. Wilson, United States
District Court, Courtroom 10A First Street Courthouse, 350 W.

1

1st Street, 10th Floor, Los Angeles, California 90012, plaintiff United States of America will and hereby does move for an order, pursuant to Supplemental Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, striking the claims of the Nazik Tunyan Family Trust in this action.

This motion is made following the status conference of all parties which took place on October 1, 2022, and pursuant to the Court's order of that same date. See ECF No. 23.

This motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the attached Declaration of AUSA Dan G. Boyle and exhibits; the attached Sealed Declaration of IRS SA Geffrey Clark and sealed exhibits; and all pleadings and papers filed in this action.

Dated: November 2, 2022         Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney
                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division
                                JONATHAN GALATZAN
                                Assistant United States Attorney
                                Chief, Asset Forfeiture Section

                                      /s/
                                _____
                                DAN G. BOYLE
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................... 1

II.  FACTUAL BACKGROUND ....................................... 2

III. ARGUMENT ................................................. 4

   A.   Relevant Civil Forfeiture Law and Legal Background ...... 4

   B.   Nominee Claimants Lack Standing ........................ 6

   C.   Standard of Review ..................................... 9

   D.   As a Nominee for Dadyan, the Trust Lacks Standing to
Contest Forfeiture of the Weddington Property .............. 10

IV.  CONCLUSION ............................................... 18

i

**TABLE OF AUTHORITIES**

**Cases**

Prompt Staffing, Inc. v. United States,
  321 F. Supp. 3d 1157 (C.D. Cal. 2018) ....................... 7

United States v Approximately $417,148.06, et al.,
  Case No. S-99-cv-2456-MLS (E.D.Cal. April 4, 2002) ......... 16

United States v. $1,181,895.00 in U.S. Currency,
  No. CV 14-03973-CBM, 2015 WL 63139 (C.D. Cal. Feb. 12, 2015). 4

United States v. $100,348 in U.S. Currency,
  354 F.3d 1110 (9th Cir. 2004) ............................... 5

United States v. $41,475.00 in U.S. Currency,
  No. CV 15-00696-R, 2016 WL 337380 (C.D. Cal. Jan. 6, 2016)... 5

United States v. Cambio Exacto, S.A.,
  166 F.3d 522 (2d Cir. 1999) ................................. 7

United States v. Contents of Accts. Numbers 3034504504 & 144-
  07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc.,
  971 F.2d 974 (3d Cir. 1992) ............................ 10, 17

United States v. Lazarenko,
  476 F.3d 642 (9th Cir. 2007) ................................ 7

United States v. Nava,
  404 F.3d 1119 (9th Cir. 2005) ............................... 7

United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-
  Prop Aircraft,
  619 F.3d 1275 (11th Cir. 2010) .......................... 9, 16

United States v. One Parcel of Land Known as Lot 111-B,
  902 F.2d 1443 (9th Cir. 1990) ............................ 6, 8

United States v. One-Sixth Share,
  326 F.3d 36 (1st Cir. 2003) ................................. 4

United States v. Real Prop. Located at 5208 Los Franciscos Way,
  Los Angeles, Cal.,
  385 F.3d 1187 (9th Cir. 2004) ............................ 4, 5

United States v. Sum of $70,990,605,
  234 F. Supp. 3d 212 (D.D.C. 2017) ........................... 7

United States v. Szaflarski,
  614 F. App'x 836 (7th Cir. 2015) ............................ 7

United States v. Vacant Land Located at 10th St. and Challenger
  Way, 15 F.3d 128, 130 (9th Cir. 1993) ................. 6, 8, 12

United States v. Various Coins,
  No. 3:11-CV-00387-MA, 2013 WL 1183312 (D. Or. Mar. 21, 2013) 8

**Treatises**

Cassella, Stefan D., Asset Forfeiture Law in the United States,
  (2d ed. 2013) ............................................ 5, 6

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

The risk of claims made through nominees or straw owners is uniquely high in a *in rem* civil forfeiture action, and accordingly, each claimant in such a proceeding is required to independently establish his or her standing to contest forfeiture of any defendant asset to which he or she makes a claim. This is a threshold issue, and the government may challenge a claimant's standing in order to determine whether the claimant is acting on behalf of some other party who has strategically chosen not to appear. This is one such case.

Here, claimant Nazik Tunyan Family Trust (the "Trust") has filed claims to the defendant real property (the "Weddington Property") through its purported trustee, Greta Akopyan ("Akopyan"). Akopyan is the mother of Tamara Dadyan ("Dadyan"), a convicted felon who was a key member of a multi-million dollar disaster relief fraud scheme. Dadyan pled guilty to a range of crimes, then attempted to withdraw her plea, and when that attempt failed, fled the country following her sentencing and prior to her surrender, only to be recaptured hiding in Montenegro. She currently awaits extradition in a Montenegrin prison. Here, the Trust is nothing more than an artifice intended to create the appearance of separation between Dadyan and the Weddington Property, as Dadyan has continuously controlled the property and the evidence detailed herein shows that the Trust was operated by Dadyan using a stolen, synthetic, or fictitious identity. Dadyan has elected not to file a claim here, appearing instead through her Trojan horse, the Trust. The

1

Court should reject this ploy and find that the Trust lacks standing to contest forfeiture here.

**II.  FACTUAL BACKGROUND**

Having overseen the criminal trial and post-trial proceedings in United States v. Ayvazyan, et al., 20-cr-579-SVW (the "Criminal Action"), the Court is well-versed in the factual history regarding Dadyan and her conspirators. As such, the government limits this recitation of the facts to those relevant to the Weddington Property which are either admitted in the Trust's interrogatory responses, see Boyle Decl.,[1] Ex. 1, or not reasonably subject to dispute. Those facts admitted in Dadyan's plea agreement in the Criminal Action (20-cr-579-SVW, ECF No. 525) or otherwise proven at trial in the Criminal Action are addressed herein.

In brief, the Weddington Property is a residential home located in the Encino neighborhood of Los Angeles, California. Beginning in 2005, the Weddington Property was owned jointly by Dadyan and Akopyan. See Boyle Decl., Ex. 2, at 1-2.[2] On or about September 9, 2016, the Weddington Property was transferred from Dadyan and Akopyan to the Trust, with Nazik Tunyan identified as trustee. See Ex. 2, at 3-4. According to the Trust, from September 25, 2014 and August 21, 2022, the trustee of the Trust

---

[1] References to the "Boyle Declaration" or "Boyle Decl." refer to the accompanying Declaration of AUSA Dan Boyle and attachments thereto.

[2] Pursuant to Fed. R. Evid 803(14) recorded title documents are non-hearsay evidence of an interest in real property.

2

was Geghetsik Gevorgyan ("Gevorgyan"). <u>See</u> Ex. 1, at 3.[3] The Weddington Property remains titled to the Trust, which was created on or about September 25, 2014. <u>See</u> Ex. 1, at 2-3.[4]

On or about August 18, 2020, the Trust transferred the Weddington Property to Gevorgyan personally, only to be immediately re-transferred back to the Trust the same day. <u>See</u> Ex. 2, at 6-7, 10-11. This transfer appears to have coincided with a mortgage application in Gevorgyan's name to Recovco Mortgage Management ("Recovco"), as on August 19, 2020, a mortgage was recorded on the Weddington Property for Recovco in the amount of $1,875,000, identifying Gevorgyan as the borrower. <u>See</u> Ex. 2, at 17.

The Verified Complaint in this action was filed on July 20, 2022. <u>See</u> ECF No. 1. Notice was provided to all potentially-interested parties, including through service on Akopyan at the Weddington Property on July 29, 2022. <u>See</u> ECF No. 10 (process receipt and return signed by Akopyan). On or about August 22, 2022, Akopyan was substituted for Gevorgyan as trustee of the

---

[3] These dates are those provided by the Trust in its sworn interrogatory responses, but the government notes that public record documents indicate that the Trust's dates are incorrect – according to the recorded title documents, Gevorgyan only became trustee in or about June of 2019. <u>See</u> Ex. 2, at 31. Ultimately this discrepancy is likely immaterial, but is more evidence that Gevorgyan was merely a straw trustee.

[4] According to the Trust's interrogatory responses, the Weddington Property was transferred to the Trust from Dadyan and Akopyan in 2014, but this transfer was only recorded on August 28, 2020. <u>See</u> Ex. 1, at 3. This response is inconsistent with the recorded title documents, which reflect a transfer in 2016. <u>See</u> Ex. 2, at 3-4.

Trust. <u>See</u> Ex. 1, at 3. Akopyan filed a claim on behalf of the Trust on August 29, 2022. <u>See</u> ECF No. 11.

There is currently one mortgage on the Weddington Property, held by claimant JP Morgan Chase Bank ("Chase") as successor to Recovco, in the amount of $1,875,000. <u>See</u> Ex. 1, at 5; <u>see also</u> ECF No. 16 (Claim of Chase).

**III. ARGUMENT**

**A. Relevant Civil Forfeiture Law and Legal Background**

In a civil *in rem* forfeiture case, the Government is the plaintiff, the property is the defendant, and the claimant is an intervenor seeking to challenge the forfeiture. <u>See</u> <u>United States v. Obaid,</u> Case No. 18-56657 (9th Cir., Aug. 24, 2020), Slip Op. at 9; <u>United States v. One-Sixth Share</u>, 326 F.3d 36, 40 (1st Cir. 2003) ("Because civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene."). As an intervenor, a claimant must establish an interest in the property sufficient to invoke the court's jurisdiction. <u>See</u> <u>United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.</u>, 385 F.3d 1187, 1193 (9th Cir. 2004) ("The substantive merits of the government's forfeiture action—whatever they may be—cannot be challenged by a claimant lacking a sufficient interest in the defendant property to confer Article III standing").

Standing in a civil forfeiture action has two elements: statutory standing and Article III standing. <u>See</u> <u>United States v. $1,181,895.00 in U.S. Currency</u>, No. CV 14-03973-CBM, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015). Statutory standing

4

concerns a claimant's adherence to the requirements of Rule G(5) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"). See generally, Cassella, Stefan D., Asset Forfeiture Law in the United States (2d ed. 2013), § 9-3(b) (hereinafter, "Cassella"). Article III standing in a forfeiture proceeding "turns upon whether the claimant has a sufficient interest in the property to create a case or controversy." 5208 Los Franciscos Way, 385 F.3d at 1191.

"A claimant bears the burden of establishing Article III standing." United States v. $41,475.00 in U.S. Currency, No. CV 15-00696-R, 2016 WL 337380, at *1 (C.D. Cal. Jan. 6, 2016). For that reason, a claimant's standing is a threshold issue in every civil forfeiture case. See United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003). As courts have recognized, the *in rem* nature of civil forfeiture actions creates a substantial danger that claims will be filed by persons with no real interest in the property. See United States v. $100,348 in U.S. Currency, 354 F.3d 1110, 1118-19 (9th Cir. 2004) ("[T]he danger of false claims in [civil forfeiture] proceedings is substantial"); Mercado v. U.S. Customs Serv., 873 F.2d 641, 645 (2d Cir. 1989) ("[T]here is a substantial danger of false claims in forfeiture proceedings"). In particular, false claims may be filed by nominee claimants for other real parties in interest. See Cassella, § 9-3(a) ("Other claims may be filed by strawmen, nominees, or other third parties seeking to contest the forfeiture in their own names while concealing the identity of someone who cannot or will not file a claim in his

own behalf"). Accordingly, challenges to a claimant's standing in forfeiture actions often present the only opportunity for the court to weed out claims filed by improper claimants before engaging in extensive discovery. Id. A claimant's standing to contest forfeiture is thus "a threshold matter that must be resolved before addressing the merits of the asset forfeiture claim." 5208 Los Franciscos Way, 385 F.3d at 1191.

**B.   Nominee Claimants Lack Standing**

As noted above, civil forfeiture cases present unique risks of false claims. As is relevant here, courts have held that a nominee owner who holds bare title on behalf of another lacks standing to contest forfeiture. See Cassella, § 10-5(b) ("[T]he overwhelming majority of cases hold that title alone is not sufficient to establish standing to contest a civil forfeiture action"). The Ninth Circuit in particular has stated that a claimant in a forfeiture action has the burden of demonstrating that it "owns or has an interest in the forfeited property." United States v. One Parcel of Land Known as Lot 111-B, 902 F.2d 1443, 1444 (9th Cir. 1990) (hereinafter "One Parcel of Land"). In other words, a claimant needs to be the true owner of the property to challenge the forfeiture; he or she cannot be an owner in name alone. See United States v. Vacant Land Located at 10th St. and Challenger Way, 15 F.3d 128, 130 (9th Cir. 1993) (hereinafter "Vacant Land"). To determine whether a claimant is the true owner, courts look to who exercised "dominion and control over the property. See id. "[P]ossession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge

6

a forfeiture." <u>One Parcel of Land</u>, 902 F.2d at 1444; <u>United States v. Nava</u>, 404 F.3d 1119, 1130 n.6 (9th Cir. 2005) ("[P]ossession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture").

This is because a nominee or straw owner suffers no real injury by forfeiture of the property, as the injury is felt by the real owner, and so the nominee fails to meet the threshold of Article III standing. <u>See</u> <u>United States v. Cambio Exacto, S.A.,</u> 166 F.3d 522, 527 (2d Cir. 1999); <u>United States v. Sum of $70,990,605</u>, 234 F. Supp. 3d 212, 230 (D.D.C. 2017) ("Where such a straw owner holds title to the property 'for somebody else,' the straw owner is not, in fact, injured when the property is taken" (quoting <u>Cambio Exacto</u>)); <u>cf.</u> <u>United States v. Lazarenko</u>, 476 F.3d 642, 649–50 (9th Cir. 2007) (to establish Article III standing litigant must show an "actual or imminent injury—not a hypothetical, conjectural, or abstract injury" (citing <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 12 (2004))).

"A nominee is one who holds bare legal title to property for the benefit of another." <u>Prompt Staffing, Inc. v. United States</u>, 321 F. Supp. 3d 1157, 1172 (C.D. Cal. 2018)(Wilson, J.); <u>see also</u> <u>United States v. Szaflarski</u>, 614 F. App'x 836, 838 (7th Cir. 2015) ("Black's Law Dictionary defines a 'nominee' (in the context of property law) as a 'party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others.'" (quoting Black's Law Dictionary 1149 (9th ed. 2009))).

1          To determine whether a purported owner holds title on
2     behalf of another in a civil forfeiture case, courts will look
3     behind mere title for evidence of dominion and control over the
4     property. See United States v. Various Coins, No. 3:11-CV-00387-
5     MA, 2013 WL 1183312, at *10 (D. Or. Mar. 21, 2013) ("In the
6     typical 'nominal ownership' situation, the court looks behind
7     the formal legal title to determine whether the record title
8     owner is a 'strawman' set up to conceal the financial affairs or
9     illegal dealings of someone else."). For example, in Vacant
10    Land, the Ninth Circuit held that where there was a transfer of
11    property from a drug dealer to his father-in-law, the father-in-
12    law lacked standing to contest forfeiture because, even though
13    the father-in-law was the titled owner, he had received the
14    property for no consideration, exercised "[n]ot a jot or tittle
15    of dominion and control," and evidence showed that he had
16    neither paid taxes on the property nor had the physical ability
17    to enter it. 15 F.3d at 130.

18         Similarly in One Parcel of Land, the Ninth Circuit found a
19    nominee claimant to lack standing where the claimant "presented
20    no documentary evidence regarding his finances or payments with
21    respect to the purchase of the property" and "could not remember
22    how much he had contributed, or the amounts that others had
23    loaned to him," and although claimant asserted he had paid taxes
24    on the property, he had "no record or writing to support this
25    claim." 902 F.2d at 1444-45. The Circuit held that the district
26    court had properly weighed the credibility of witnesses and
27    affirmed the trial court's finding that the claimant had "failed
28    to meet his burden of proving more than nominal ownership." Id.

See also United States v. One 1990 Beechcraft, 1900 C Twin
Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T,
Serial UC118, 619 F.3d 1275, 1278 (11th Cir. 2010) ("CAFRA did
not, however, change the requirement that it must be the
claimant who exercises that dominion or control. Although this
identity requirement may seem obvious, it is of particular
importance to forfeiture because things are often not what they
appear to be." (cleaned up)).

   **C.   Standard of Review**

      The government brings this motion pursuant to Supplemental
Rule G(8)(c)(i)(B) and relies on information outside the
pleadings, and thus pursuant to subsection (c)(ii)(B), this
motion is "presented as … a motion to determine after a hearing
or by summary judgment whether the claimant can carry the burden
of establishing standing by a preponderance of the evidence." As
explained in the 2006 Advisory Committee Notes to this
subsection, "[i]f material facts are disputed, precluding a
grant of summary judgment, the court may hold an evidentiary
hearing. The evidentiary hearing is held by the court without a
jury. The claimant has the burden to establish claim standing at
a hearing." 2006 Advisory Committee Notes to Rule G(8)(c)(ii).

      The Ninth Circuit has held that past the pleading stage,
a claimant must present some evidence of dominion and control
beyond the claim itself to establish standing. See $133,420.00
in U.S. Currency, 672 F.3d at 638 ("[A] claimant's bare
assertion of an ownership or possessory interest, in the absence
of some other evidence, is not enough to survive a motion for

summary judgment").[5] Other Circuits have agreed and elaborated on this standard: once the government has made a *prima facia* case that the claimant is a mere nominee of another, the claimant must come forward with evidence of his or her independent ownership. See United States v. Contents of Accts. Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc., 971 F.2d 974, 986 (3d Cir. 1992) ("Once the government made out a prima facie case, [claimant] Friko had the burden of establishing its independent power to control the accounts"). The claimant must then present some evidence beyond the pleadings or conclusory allegations. See $100,348 in U.S. Currency, 354 F.3d at 1118-1119 ("Because the danger of false claims in civil forfeiture action is substantial, courts 'demand more than conclusory or hearsay allegations of some 'interest' in the forfeited property.'")

### D. As a Nominee for Dadyan, the Trust Lacks Standing to Contest Forfeiture of the Weddington Property

#### 1. The Trust is Merely a Nominee for Dadyan

It is settled law in this Circuit that a claimant who lacks dominion and control over an asset also lacks standing to contest forfeiture of the same. See Vacant Land, 15 F.3d at 130. As such, nominees who hold bare title for another have no

---

[5] While these standards are the same, this Motion should be construed as one seeking an evidentiary hearing rather than for summary judgment, as the government has obtained only limited discovery from the Trust at this time and material facts are in dispute. As such, the government should not be precluded from seeking summary judgment on the merits in the future should the Trust establish standing to contest forfeiture at this stage.

interest to defend in a civil forfeiture proceedings. As described above, the government's burden here is to put forth a *prima facia* case that the Trust is merely a nominee for Dadyan. There is ample – indeed overwhelming – evidence that the Trust was merely a sham and that the purported trustee, Gevorgyan, was either a false, stolen, synthetic identity used by Dadyan to hide her control over the property.

First, while the Trust claims that Gevorgyan was the trustee of the Trust from 2014 until recently,[6] within days of the government filing the Complaint in this action, Dadyan's mother, Akopyan, was substituted as trustee for Gevorgyan (specifically, on August 22, 2022) – despite Gevorgyan having been identified as trustee for more than five years and obtaining a nearly two million dollar mortgage encumbering the Weddington Property. See Ex. 1, at 3-4. There is little reason for this last-second substitution other than to avoid having to appear through a trustee who may or may not have been a legitimate identity – indeed these transactions make little economic sense at all, as it as (purportedly) Gevorgyan who burdened the Weddington Property with the multi-million-dollar mortgage now held by Chase. Even the Trust's filed claim calls the legitimacy of the Trust into question – the metadata for the Trust's claim identified the document name as "dadyan claim." See ECF No. 11 (metadata file titled "dadyan claim").

---

[6] As noted above, the Trust asserts in the interrogatory responses that Gevorgyan was trustee since the Trust's inception in 2014, see Ex. 1, at 3, but publicly-recorded documents show that Gevorgyan was first identified as trustee in 2019. See Ex. 2, at 31.

Second, as in <u>Vacant Land</u>, there is no evidence that the Trust paid any consideration to Dadyan and/or Akopyan for the Weddington Property. To the contrary, there is evidence that payments on the Weddington Property were being made by Dadyan through stolen identities, in some cases using some of the same stolen funds at issue in the Criminal Action. <u>See</u> Ex. 3, at 19-20 (Dadyan plea agreement admitting that Dadyan knowingly used stolen identity of "A.D."); Ex. 4, at 9 (summary tracing chart from Criminal Action tracing $31,318 in PPP loan proceeds from "Anna Dzukaeva" to loan servicer on the Weddington Property).

Third, there is ample evidence that Gevorgyan's identity was merely a front used by Dadyan. As the Court is aware, Dadyan pled guilty to crimes of impersonation and identity theft in the Criminal Action and admitted that she kept false identity documents at the Weddington Property. <u>See</u> Ex. 3, at 15-16 ("Defendant further admits that records and items found at her residence, at which she lived with co-defendant Artur Ayvazyan, included: fake identification documents; fraudulently obtained credit cards belonging to fake, synthetic and stolen identities . . . and fake and stolen notary stamps and seals belonging to state and federal courts."). Consistent with this admission, during the search of the Weddington Property, investigating agents found numerous documents in the name of false, synthetic, or stolen identities, and one such identity was that of Gevorgyan. <u>See</u> Clark Decl.,[7] at ¶ 2-3. For example, in Dadyan's

---

[7] References to the "Clark Declaration" or "Clark Decl." refer to the accompanying Declaration of IRS-CI SA Geffrey Clark and attachments thereto.

1    office in the Weddington Property, agents found handwritten
2    copies of title documents for the property in Gevorgyan's name,
3    see Clark Decl., Ex 5, at 1-7; letters addressed to and from
4    Gevorgyan, id., at 8-9; a handwritten affidavit purportedly
5    signed by Gevorgyan, id., at 10; IRS tax documents addressed to
6    Gevorgyan, id., at 11-15; and property tax documents addressed
7    to Gevorgyan. Id., at 16. There is simply no legitimate reason
8    such a volume of documents outwardly belonging to Gevorgyan
9    would be in Dadyan's office in the Weddington Property – a place
10   Dadyan admitted she kept synthetic and stolen identity
11   information.

12        Fourth, discovery produced by Chase in this action has
13   revealed that someone using the Gevorgyan identity obtained an
14   $1,875,000 loan on the Weddington Property through a false loan
15   application identifying Gevorgyan as a manager of Fiber One
16   Media. See Clark Decl., Ex. 6. The Court is likely aware from
17   the Criminal Action that Fiber One Media was an entity used by
18   Dadyan and her co-conspirators to commit the fraud underlying
19   the Criminal Action. See Ex. 4, at 12 (tracing stolen PPP funds
20   into and out of Fiber One Media). It is no coincidence that the
21   Gevorgyan identity obtained a multi-million dollar loan using
22   one of the same entities used by Dadyan and her coconspirators
23   as part of their fraud enterprise.

24   ████████████████████████ ████████████████ ██ ███
25   █████████████████████████ █████████████████████████████
26   ████████████████████████████████████████████
27   ████████████████████ ███████████████████████████████████
28   ████████████████████ ███████████████████████████



14



1 ████████████████████████████████████████████

2 ████████████████  ████████████████  ████  ██████

3 ██████████████████████████████████████████████

4 █████████████████████████████

5       As another court in this Circuit held in largely identical

6 circumstances, a trust lacks standing to contest forfeiture

7 where the trust is merely a sham masking the identity of a

8 criminal defendant. In <u>United States v Approximately</u>

9 <u>$417,148.06, et al.</u>, Case No. S-99-cv-2456-MLS (E.D.Cal. April

10 4, 2002), the court addressed claims by two trusts which the

11 government alleged were mere shams created to protect assets of

12 a defendant in a parallel criminal action. <u>See</u> Boyle Decl.,

13 Appendix A.[9] The court examined the trusts and the defendant's

14 plea in the parallel action, and held that the trusts lacked

15 standing, as the defendant had "total control" over them and

16 used the trusts primarily for his own benefit, and thus the

17 trusts could suffer no injury from forfeiture. <u>Id</u>., at 6-8.[10]

18       Similarly, in <u>One 1990 Beechcraft</u>, the Eleventh Circuit

19 held that a corporate claimant lacked standing to contest

20 forfeiture of an aircraft where, although the corporation was on

21 title, the majority shareholder controlled all aspects of the

22 property, operated the aircraft, paid expenses on the aircraft,

23 and even controlled the defense in the forfeiture proceeding.

24 ────────────────────

25       [9] Because this decision is not available on Westlaw, a copy
is attached as Appendix A for the Court's convenience.

26       [10]    This decision was upheld on appeal, but in an
27 unpublished opinion which is not precedential authority in this
Circuit. <u>See</u> <u>United States v. Approximately $417,148.06 in U.S.</u>
28 <u>Currency, et al</u>., 72 Fed.Appx. 624 (2003)(unpublished).

619 F.3d at, 1279. And in <u>Contents of Accts. Numbers 3034504504</u> <u>& 144-07143</u>, 971 F.2d at 986, the Third Circuit held that a corporate claimant lacked standing where the record showed that the corporate entity was simply a shell for a fugitive, that the corporation's directors were all the fugitive's family members that the fugitive had authorized the filing of the coporation's claim while abroad, and that "[i]f Friko [corporation] had an independent existence, it should have presented evidence of legitimate business dealings in its own right." 971 F.2d at 986.

So too here. Dadyan owned the Weddington Property before transferring it to the Trust for no apparent consideration, continued to reside there and admittedly operated a fraud operation out of the property, and was found with a wealth of documents in the name of the purported trustee, who was quickly and quietly removed once it became clear "Gevorgyan" would have to appear and oppose forfeiture here.

The government has more than met its *prima facia* burden, and respectfully requests that the Court hold an evidentiary hearing where the Court can take evidence, weigh credibility of any witnesses, and resolve any remaining material issues of disputed fact as to the Trust's purported standing.

**IV.   CONCLUSION**

   Based on the foregoing arguments and authorities, plaintiff respectfully requests the Court hold an evidentiary hearing and enter an order striking the claim of the Trust, ECF No. 11, and provide such further or additional relief to which it deems the plaintiff is entitled.


DATED: November 2, 2022          E. MARTIN ESTRADA
                                 United States Attorney
                                 SCOTT M. GARRINGER
                                 Assistant United States Attorney
                                 Chief, Criminal Division
                                 JONATHAN GALATZAN
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section


                                 _____/s/_____
                                 DAN G. BOYLE
                                 Assistant United States Attorney
                                 Asset Forfeiture Section

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA