E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0142
    E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> REAL PROPERTY LOCATED IN LOS ANGELES CALIFORNIA <br><br> Defendant. | Case No. CV 22-4950-SVW <br><br> REPLY IN FURTHER SUPPORT OF MOTION TO STRIKE CLAIMS PURSUANT TO RULE G(8)(c) OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATION OF SA GEFFREY CLARK <br><br> HEARING DATE: December 5, 2022 <br> LOCATION: Courtroom of the Hon. Stephen R. Wilson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Dan G. Boyle, hereby files this Reply in further support of its

1

Motion pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to strike certain claims in this action (the "Motion"). [ECF No. 29].

    This Reply is based upon the attached Reply Memorandum of Points and Authorities and the attached Supplemental Declaration of IRS SA Geffrey Clark.

Dated: November 21, 2022    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

      /s/
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In a civil forfeiture case, "things are often not what they appear to be." <u>United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T, Serial UC118</u>, 619 F.3d 1275, 1278 (11th Cir. 2010). For this reason, a claimant must exercise actual dominion and control over a defendant asset in order to have standing to contest forfeiture. Thus, when the government makes a *prima facia* showing that a claimant is simply a nominee for another, the court then "looks behind the formal legal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else." <u>United States v. Various Coins</u>, No. 3:11-CV-00387-MA, 2013 WL 1183312, at *10 (D. Or. Mar. 21, 2013).

Here, claimant Nazik Tunyan Family Trust ("Claimant"), through its trustee Greta Akopyan ("Akopyan"), asks the Court to disregard this law and do the opposite: blindly accept the name on title documents regardless of who actually controlled the defendant real property. But the government is not obligated to litigate against strawmen and nominees, and the government has offered substantial evidence – including Akopyan's own admissions – that things are not what they seem here. The Court can, and should, conduct an evidentiary hearing to determine whether Claimant is merely a nominee of Tamara Dadyan – a convicted fraudster who remains a fugitive to this day.

1

**II. ARGUMENT**

    1. <u>Claimant's Purportedly-Undisputed Facts are Disputed by Record Evidence, and an Evidentiary Hearing is Needed</u>

Claimant's Opposition to the Motion (the "Opposition" or "Opp.") begins with a series of purportedly-undisputed facts, Opp. at 4, which are in fact deeply disputed. A few examples of these contractions include:

- Claimant asserts that it is undisputed that "Grantor/Trustor (Nazik Tunyan) appointed GEGHETSIK GEVORGYAN [] as the initial Trustee of the Trust" beginning in 2014 Opp. at 4. Publicly-recorded title documents dated in 2016, however, show that it was Tunyan who was the initial trustee, not Gevorgyan (see Mot., Ex. 2, at 15-16)[1], and that Tunyan was only replaced by Gevorgyan as trustee in or about 2019. See Mot., Ex. 2, at 42-43 (change of trustee affidavit).
- Claimant also asserts that Gevorgyan "held dominion and control over the Subject Property as the Trustee of the Trust until he resigned as trustee." Opp. at 4. But this is obviously disputed – the premise of the Motion is the government's contention that Gevorgyan was a nominee hiding Dadyan's continued control over the Defendant Property, and Gevorgyan's lack of control over the

---

[1] For ease of reference, the cited page numbers for the exhibits to the Motion refer to the ECF-stamp header page numbers identified in ECF No. 29-1.

property was admitted by Akopyan, as reflected in Sealed Exhibit 7 to the Motion (see Mot. at 13-15).

- Claimant similarly asserts that "GEGHETSIK GEVORGYAN resigned as Trustee." Opp. at 4. But Claimant does not offer any declaration from Gevorgyan or any document signed by Gevorgyan reflecting a change of trustee to Akopyan. This is notable, because pursuant to the terms of the trust (as submitted by Claimants), any resignation by a trustee must be in writing. See Opp. Ex. A, at Art. 13(d)("Resignation of Trustee: Any Trustee hereunder may resign by a notice in writing delivered to the Grantor, if the Grantor is then living, and, after the Grantor's death to all current Beneficiaries of the Trust.").

- Claimant asserts that Tunyan died in 2015 (see Opp. at 1 (referring to "the death of Nazik Tunyan in 2015"), but according to publicly-recorded title records, on June 26, 2019 – a full three years after Claimant suggests he died – someone purporting to be Tunyan signed a Change of Trustee Affidavit and appeared before notary Golie Goreshi to transfer control of the Trust to Gevorgyan. See Mot., Ex. 2, at 42-43 (recorded change of trustee affidavit).[2] If Tunyan died in 2015, then who was signing and recording documents in his name in 2019? And if

---

[2] Of course, it is equally (if not more) likely that Dadyan and other members of the Ayvazyan Group simply forged Tunyan's signature and the associated notary affidavit, but this would simply be more proof that the Trust was and remains a sham.

3

someone was forging Tunyan's signature years after his death in order to transfer control the property to Gevorgyan's name, that should give the Court more reason to doubt the legitimacy of any trust documents offered by Claimant.

2. <u>The Motion Does Not Rely on Impermissible Hearsay</u>

Contrary to Claimant's arguments, <u>see</u> Opp. at 8-9, the Motion does not reply on inadmissible hearsay. At this stage, the "Court's inquiry is therefore whether the affidavits set forth facts that would be admissible in evidence." <u>United States v. 2004 Blue Lexus GX470, Washington License Plate 029RYB, VIN JTJBT20X940035115</u>, No. C08-5084BHS, 2008 WL 2224308, at *3 (W.D. Wash. May 27, 2008); <u>see also</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003) ("[W]e do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). In other words, much like at summary judgment, the question is whether the evidence offered by the government would be admissible at trial. Here, the evidence offered by the government would be admissible at trial either as non-hearsay, or hearsay subject to a recognized exception:

- Special Agent Clark will be present at the evidentiary hearing and available be cross-examined. Therefore his statements will be admissible non-hearsay.
- Akopyan's own statements, such as her interrogatory responses attached as Exhibit 1 to the Motion and

4

      statements recounted in sealed Exhibit 7 to the Motion,[3] are non-hearsay statements of a party opponent. See Fed. R. Evid. 801(d)(2).

- Publicly-recorded title documents such as those attached as Exhibit 2 to the Motion are subject to a hearsay exception so long as they purport to "establish or affect an interest in property if the matter stated was relevant to the document's purpose" – as they do here. See Fed. R. Evid. 803(15).
- Dadyan's plea agreement, attached as Exhibit 3 to the Motion, and accompanying criminal conviction, fall within the hearsay exception in Federal Rule of Evidence 803(22).
- Claimant's filed claim is not hearsay, including the metadata for the Claim which identified the document as prepared for "dadyan." See ECF No. 11 (metadata file title name as "dadyan claim"). See Bueno v. Benhamou, No. 221CV04595JVSSPX, 2022 WL 1592593, at *6 (C.D. Cal. Mar. 16, 2022) ("[M]etadata is not hearsay because it is machine-generated" (citation omitted)
- Finally, the government's Exhibits 5 and 6 to the Motion are not hearsay because they are explicitly *not* being

---

[3] A translation of an opposing-party's statement in a foreign language is not hearsay, absent proof the translator had a motive to mislead or lacked capability. United States v. Orm Hieng, 679 F.3d 1131, 1139 (9th Cir. 2012) ("A defendant and an interpreter are treated as identical for testimonial purposes if the interpreter acted as a mere language conduit"). Here, the translation is of a recording, so Claimant is free testify to her own interpretation of the recording if she wishes.

offered for the truth; quite to the contrary, these documents are offered to show that they are false, and false in a manner consistent with criminal scheme underlying the convictions of Dadyan and other members of the Ayvazyan Group.

In fact, the primary piece of hearsay at issue here appears to the purported trust agreement Claimant attaches to her Opposition as Exhibit A. Notably, Akopyan does not affirm that this document is true and correct in her declaration – even as she vouches for the accuracy of the two other exhibits attached to the Opposition.[4] See Akopyan Decl. ¶ 2-3. Where evidence is submitted without a declaration authenticating it based on personal knowledge, it is inadmissible. See e.g., United States v. Novelli, 381 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (where government failed to offer a declaration from an IRS employee with personal knowledge of the authenticity of tax returns, documents were not admissible as evidence). The omission of Exhibit A from Akopyan declaration even more concerning because the trust agreement is contradicted by public records from 2019 showing Tunyan was replaced by Gevorgyan years after Exhibit A was purportedly signed, and this public filing itself bears Tunyan's signature years after Claimant suggests he had died.

---

[4] In her declaration, Akopyan does state that she has "reviewed the Opposition to the Motion to Strike Claims and believe[d] the facts stated therein are true to my own knowledge," (Akopyan Decl. ¶ 7), but it is unclear if this catchall statement intends to refer to Exhibit A, particularly when her declaration explicitly affirms Exhibits B & C.

### 3. The Government's Sealed Exhibit 7 is not "Illegal"

Claimant makes no attempt in either her Opposition or accompanying Declaration to explain the statements she made which are recounted in the government's Sealed Exhibit 7. Instead, Claimant argues that the recording itself is an illegally-recorded telephone call under California law, and thus must be discounted. Claimant cites California Penal Code § 632 and argues that "all parties to a telephone conversation must agree to be recorded." This argument is simple misdirection. As explained in both the Clark Declaration attached to the Motion, and the supplemental Clark Declaration accompanying this Reply, Sealed Exhibit 7 **was not** a recorded phone call. Indeed, the first page of Sealed Exhibit 7 describes it as a translation of a *video* file. Rather, as explained in the Clark Declarations, Exhibit 7 is a translation of a video recording from a CCTV system in a business with clearly-posted signage indicating that the location was CCTV-monitored (see Clark Decl., ¶ 6), so California Penal Code § 632 simply does not apply. See Cal. Penal Code § 632(c) (law does not apply "in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded").[5]

---

[5] Even if Claimant were correct and Exhibit 7 were a surreptitiously recorded telephone conversation – and it was not – that would not require exclusion of this evidence, as in People v. Guzman, 8 Cal. 5th 673, 692 (2019), the Supreme Court of California held that the exclusionary provisions of § 632 were invalid under state law.

Notably, Akopyan says nothing about Exhibit 7 in her declaration, does not suggest that this conversation was recorded by phone, does not assert that she thought this conversation was confidential, and does not otherwise indicate that she was unaware of the posted signage about recordings in this business.[6]

### 4. The Court Should Require the Presence of Akopyan at the Evidentiary Hearing

Concurrent with this Reply, the government is giving notice pursuant to L.R. 7-8 of its request to cross-examine declarant Akopyan at the evidentiary hearing scheduled for December 5, 2022. Pursuant to L.R. 7-8, a moving party may request the presence of a declarant "where an issue of fact is to be determined" and the declarant is "not beyond the subpoena power of the Court and who is reasonably available to the party offering the declaration." See C.D.Cal. L.R. 7-8. Here, there are disputed issues of fact to be determined at the evidentiary hearing, including: (1) the failure of Claimant to swear to the accuracy of Exhibit A accompanying the Opposition,(2) the discrepancies between Claimant's proposed facts and the publicly-recorded title documents (such as the presence of Tunyan's signature on publicly-recorded documents years after his purported death in 2015), (3) the alleged resignation of named trustee Gevorgyan shortly after this action was filed, and

---

[6] Claimant refers to "Mr. Clark's admission that this was an illegal recording" Opp. at 9) but does not cite to any part of the Clark Declaration in support of this supposed-admission. It remains unclear what this might refer to.

8

(4) Akopyan's statements identified in Sealed Exhibit 7. There is no reason to believe Akopyan is beyond this court's subpoena power, as her declaration was signed November 12, 2022 in Encino California – well within this Judicial District. And the trust is appearing through Akopyan as trustee, so there is no question that she is available to the trust.

    As stated above, The government will have Special Agent Clark present and available for cross-examination. The government is not requesting the presence of declarant A.A.,[7] who is a minor and whose declaration only alleges her minor status and current residence.

---

[7] The minor declarant's name is redacted pursuant to Fed.R.Civ.P. 5.2(a).

**III. CONCLUSION**

For the above reasons, and those stated in the Motion, the government respectfully requests that the Motion to Strike the claim of claimant Nazik Tunyan Family Trust be granted.

DATED: November 21, 2022       E. MARTIN ESTRADA
                               United States Attorney
                               SCOTT M. GARRINGER
                               Assistant United States Attorney
                               Chief, Criminal Division
                               JONATHAN GALATZAN
                               Assistant United States Attorney
                               Chief, Asset Forfeiture Section

                                     /s/
                               DAN G. BOYLE
                               Assistant United States Attorney
                               Asset Forfeiture Section

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

SUPPLEMENTAL DECLARATION OF GEFFREY CLARK

I, Geffrey Clark, hereby declare and state as follows:

I have personal knowledge of the following facts and, if called as a witness, would testify thereto under oath.

1. I am a Special Agent with the Internal Revenue Service – Criminal Investigations and was a case agent for the prosecution of United States v. Ayvazyan, 20-cr-579-SVW.

2. I previously submitted a partially-sealed declaration in support of the government's Motion to Strike the claims of claimant Nazik Tunyan Family Trust (the "Declaration").

3. Attached as Sealed Exhibit 7 to the Declaration was a true and correct copy of a translation of a recording which included statements by Greta Akopyan (the "Recording").

4. The Recording was a translation of a video clip from a closed-circuit television system at a business, as detailed further in my Declaration.

5. The Recording was not a recording of a telephone call.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November _18_, 2022 in Los Angeles, California.

*Geffrey Clark*
GEFFREY CLARK, SA IRS-CI

1