E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
DAN G. BOYLE (Cal. Bar No. 332518)
  312 North Spring Street
  Los Angeles, CA 90012
  Telephone: (213) 894-2426
  Facsimile: (213) 894-0142
  E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>REAL PROPERTY LOCATED IN LOS ANGELES, CALIFORNIA,<br><br>          Defendant. | No. 2:22-cv-04950-SVW-JPR<br><br>DECLARATION OF GEGHETSIK GEVORGYAN |
| NAZIK TUNYAN FAMILY TRUST, GRETA AKOPYAN, AND JPMORGAN CHASE BANK, N.A.,<br><br>          Claimants. | |

1

## <u>DECLARATION OF GEGHETSIK GEVORGYAN</u>

2      I, Geghetsik Gevorgyan, declare and state as follows

3      1.   I have lived in the United States, specifically the State

4  of Washington, for approximately 10-11 years with my husband,

5  Beniamin Shahinyan. We have lived in the cities of Kirkland and

6  Redmond in the state of Washington.

7      2.   Neither my husband nor I have ever lived in California.

8      3.   My husband and I have never owned any properties in

9  California or anywhere else in the United States.

10      4.   I have never been a trustee of any trust, and do not know

11  what it means to be the trustee of a trust.

12      5.   I am unfamiliar with real property located at 17450

13  Weddington, Encino, California. I am not the Trustee of that

    property, do not own this property, have never lived there, and have

14  never visited there.

15      6.   I have never taken out any home loans or signed any loan

16  documents for a real property located at 17450 Weddington, Encino,

17  California.

18      7.   I have never worked at Fiber One Media, and I do not

19  recognize that name.

20      8.   I have reviewed a document titled Nazik Tunyan Family Trust

21  dated September 25, 2014. A copy of this document is attached as

22  Exhibit 1. I did not sign this document, and I was never Trustee of

23  the Nazik Tunyan Family Trust.

24      9.   I have never known anyone named Nazik Tunyan.

25      10.  I have reviewed a document identified as Los Angeles County

26  Recorder document 20201017939. A copy of this document is attached as

27

28

1 | Exhibit 2. I did not sign this document, and the handwriting is not
2 | mine.
3 |     11. I have reviewed a document identified as Los Angeles County
4 | Recorder document 20201017941. A copy of this document is attached as
5 | Exhibit 3. I did not sign this document, and the handwriting is not
6 | mine.
7 |     12. I have reviewed a document identified as Los Angeles County
8 | Recorder document 20201017940. A copy of this document is attached as
9 | Exhibit 4. I did not sign this document, and the handwriting is not
10 | mine.
11 |     I declare under penalty of perjury under the laws of the United
12 | States of America that the foregoing is true and correct.
13 |     Executed on 2/16/23 , at Kirkland, Washington.

GEGHETSIK GEVORGYAN

CERTIFICATION OF INTERPRETER

I, MIKE JEGALIAN, am fluent in the ~~written and~~ spoken
English and Armenian languages. I accurately translated this entire
document from English into Armenian to Geghitsik Gevorgyan on this
date.

2/16/23

INTERPRETER          Date

3

# EXHIBIT 1

# NAZIK TUNYAN FAMILY TRUST

This Revocable Living Trust dated 25 Day of September 2014, by and between:

**GRANTOR**

Nazik Tunyan with a mailing address of **17460 Weddington Street, Encino CA 91316**(referred to as the "Grantor,") and

**TRUSTEE**

**Geghetsik Gevorgyan** _____(referred to as the"Trustee,")

The Trustee agrees to hold any property transferred to this Trust, from whatever source, in trust under the following terms:

**Article 1.** <u>Name of the Trust</u>: This Trust shall be known as the "**NAZIK TUNYAN FAMILY TRUST** " hereinafter known as the "Trust" is not an amendment to a prior LivingTrust.

**Article 2**. <u>Transfer of Property</u>: The Grantor transferred to the Trust Estate and assets described in Attachment A which is attached and incorporated into the Trust on the date of the recording of the Grant Deed transferring said property.

The Grantor, along with any other individual, may transfer property to the ownership of the Trust. Property may be added to the Trust by writing in Attachment A, by attached receipt, or by placing the property under the ownership of the Trust.

Attachment A is for reference only, and any property transferred to the Trust formally or informally, but not listed on Attachment A, is also part of the Trust. All property transferred to the Trust formally or informally, together with the investments and reinvestments, as well as any income earned is sometimes collectively referred to herein as the "Trust Estate". All property transferred to or deposited with the Trustee shall be held by it in trust for the uses and purposes stated herein.

**Article 3**. <u>Life of the Grantor</u>: During the life of the Grantor, the Trustee shall hold, manage, and administer the Trust Estate and at the Grantor's request, dispose of the net income and principal. In the absence of any such request, the Trustee may pay to the benefit of the Grantor any part of the net income and principal as the Trustee deemsadvisable, with full power to accumulate any income not paid and to hold such income and property for later use. In the event of the Grantor becomes incapacitated, the Trustee is authorized to use any part or all of the net income and principal for the benefitof the Grantor as the Trustee deems advisable, with full power to accumulate any income not paid and to hold for future use or to add to the principal.

**Article 4**. <u>Death of the Grantor</u>: Upon the death of the Grantor, except as otherwise set forth below, the Trustee shall hold, administer and dispose of the Trust Estate as follows:

<u>Specific Distributions</u>: To grant the following property, in whole, to the specified individuals or organizations:

100% to **Angelina Ayvazyan**

A. <u>Personal Property</u>. All personal property including but not limited to: furniture, jewelry, clothing, motor vehicles, equipment, and any other tangible assets shall

be transferred to: (Choose One)

X - The Beneficiary

B. <u>Pet Trust</u>. If there are any pets owned by the Grantor a Trust for Pets shall be created at the time of the Grantor's death or incapacity appointing

_____of _____

(referred to as the "Pet Caretaker") as the Pet Caretaker effective immediately. If the Pet Caretaker is unable to perform their duties by giving the Grantor's pet(s)care needed then_____of

_____shall possess the caretaking rights of the pet(s) (referred to as the "Alternate Pet Caretaker"). If the Pet Caretaker and Alternate Pet Caretaker are unable to care for the pet(s) then an individual or organization may be selected by the Trustee for the caretaking rights of the pet(s).

i.    <u>Care of Pet(s)</u>. Care of the pet(s) shall include, but not be limited to,providing food, veterinary care (as needed), insurance, temporary boarding, medication, cleanliness, and any other care as needed for proper everyday well-being of the pet(s).

ii.    <u>Funding</u>. The Grantor(s) shall set aside (Choose One)

☐ - $_____(_____US Dollars) in trust for the Pet Caretaker. The sole purpose of the funds is for providing care for the pet(s). If the Pet Caretaker does not take possession and provide the necessary care for the pet(s) for at



least_____☐ Months ☐ Years then the funds shall be rescinded and given to the individual or organization that possesses thecaretaking rights of the pet(s).

☐ - No Funding.

iii.   3rd Party Enforcement. At any time during the lifetime of the pet(s)

_____of

_____(referred to as the "3rd Party Enforcer") may intervene to request an accounting for the funds allocated in the Trust for Pets. An accounting may not be requestedmore than once per year. In addition, from time to time the 3rd PartyEnforcer may inspect the caretaking of the pet(s) to ensure appropriate care is being provided.

C.   Residuary Property. The Trustee shall divide the principal and any undistributed income along with any property not specifically distributed into equal shares to bedistributed equally among the following individuals and/or organizations:

**Beneficiary #1**

Name: **NAZIK TUNYAN**

Address: **17450 Weddington Street, Encino, CA 91316**

E.   Failure of All Beneficiaries: In the event of the failure of all Beneficiaries, then the Trustee shall transfer the Trust Estate, discharged of the Trust, to the person or persons who would be entitled to inherit from Grantor under the laws of the State of

California as unmarried, intestate and domiciled in that State, and possessed only of the property to be distributed.

F. <u>Distribution to Any Person Who is Under the Age of 18</u>: If distribution is to be made to any person who is under eighteen (18) years of age and who is not then a Beneficiary of any portion of the Trust Estate under any provision of the Trust, the Trustee may make the distribution free of all trusts to the minor, to a parent of the minor for the minor's benefit, or to a custodian designated by the Trustee for the minor, and that distribution shall represent a complete discharge of the Trustee.

**Article 5**. Payment of Death Taxes, Administration Expenses, Etc.: Upon

the death of the Grantor, the following shall be applicable:

A. The Trustee shall pay all or any portion of any of the funeral expenses, expenses of administration, debts, taxes (including estate, inheritance or similar taxes arising by reason of the Grantor's death), interest, penalties and legacies that the legal representative of the Grantor's estate may, in accordance with the Grantor's Will, certify in writing to the Trustee.

B. In the event the assets of the Grantor's residuary probate estate shall be insufficient to pay for the Grantor's funeral expenses, expenses of administration and all Federal and State taxes in the nature of estate, inheritance or like taxes, such obligations shall be paid by the Trustee to the extent that they exceed said residuary probate estate assets.

C. In making any payments under this Article, the Trustee may rely on any certificate of the legal representative of the Grantor's estate as to the amount of said payment

and the person to whom it is to be paid.

**Article 6**. <u>Estate of Grantor</u>: Notwithstanding the instructions in Article 4 with respect to the distribution of income and principal, the Trustee is authorized in its discretion to use the income and principal of the Trust, from time to time as follows:

A. To purchase and to retain as investments any securities or other property, real or personal, belonging to the estate of the Grantor.

B. To make loans or advances to the personal representative of the estate of the Grantor on such reasonable terms as it deems advisable.

C. The Trustee is not obligated to see to the application of any funds paid over to the estate of the Grantor.

**Article 7**. <u>Trustee Powers</u>: As an extension and not a limitation of all common law and statutory authority, and except where in conflict with any other provision in the Trust, the Trustee shall have the following powers and authority:

A. To accept and receive property, real or personal, from the Grantor, from the Grantor's estate or from any other estate, trust or person, and to hold the same as a part of the Trust.

B. To collect income, interest, dividends, rents and profits.

C. To retain any part or all of the property, real or personal, received to be held in trust hereunder in the form of investments, and to invest and reinvest the property of the Trust in any investments as the Trustee may deem proper without regard for the principles of diversification or whether any form of investment

would ordinarily be considered as suitable for a trustee to make or hold; and to retain any real estate or tangible personal property received to be held in trust hereunder and/or to acquire any real property and/or tangible personal property, permitting the Beneficiaries to make such use thereof as is advisable and commensurate with their beneficial interests, and to make repairs and improvements and pay taxes, insurance premiums and other charges with respect thereto as the Trustee may deem advisable.

D. To sell any real or personal property of the Trust at public or private sale for cash or on credit or to exchange the same on terms as the Trustee may deem advisable; to lease any real or personal property of the Trust at times and on terms as the Trustee may deem advisable, whether or not the lease may extend beyond the term of any trust.

E. To borrow for the purposes of the Trust and to mortgage or pledge any real estate or personal property as security for any such loans.

F. To foreclose by entry or otherwise, extend, assign or give partial releases of any mortgages, to discharge mortgages or liens on real or personal property.

G. To sign, seal, execute and deliver all proper and necessary conveyances andinstruments for the purposes of the Trust.

H. To grant options for the sale or exchange of any property.

I. To vote in person or by proxy upon all stocks or other securities held and to exercise all conversion, subscription, voting and other rights of whatever naturepertaining to the property of the Trust and to pay any sums as may be deemed

advisable in connection therewith; and to exercise stock options.

J.  To participate in any plan of reorganization, consolidation or merger, to deposit any property of the Trust under any such plan or with any protective or reorganization committee, to delegate to such committee discretionary power with respect thereto, to pay a proportionate part of the expenses of the committee and any assessments levied under any plan and to accept and retainnew securities received in pursuance of any plan.

K.  To hold securities or any real or other personal property in the name of anominee or nominees, or in any other form.

L.  To employ legal counsel, investment counsel and agents, to decide whether ornot to act upon their recommendations and to pay to them reasonable compensation from the Trust Estate.

M.  To take any proceedings at law or in equity with reference to or in any matter concerning the Trust and to represent the interests of the Trust in any proceedings, with power to compromise or refer to arbitration any dispute in anyway affecting the same.

N.  To take steps and to do any acts which may be deemed necessary or proper forthe due care and management of the Trust.

O.  To value all property to be divided or distributed at then current fair market values, and, in the Trustee's discretion, to convert all or any part of such property into money and to make division or distribution thereof in kind or in money

P.  To refuse to accept property as a trust asset if such property could result in

liability to the Trust or otherwise impair the value of any Trust Estate.

Q.  To place any portion or all of the trust funds in any custodial or agency account or other similar account administered by a banking institution or trust company and to rely upon their investment decisions, such not constituting an unauthorized delegation of the Trustee's duties; provided that this paragraph shall not be applicable if the Trustee is a corporate Trustee.

R.  To have dealings between or among separate trusts or trust shares hereunder, including the purchase, sale or exchange of assets, or the borrowing or lending of money, on such reasonable terms as may be appropriate in the circumstances.

S.  To open and maintain checking or savings accounts in any bank or banks and todesignate any one or more persons to execute checks or make withdrawals therefrom.

T.  To make loans to any person or persons upon such reasonable terms as the Trustee may determine, provided that no loan shall be made to any person whois also serving as a Trustee hereunder.

**Article 8**. <u>Payment of Premiums</u>: The Trustee shall in no way be bound to pay the premiums or other charges on any policy payable hereunder, nor to see that any such policy is kept in force, but shall use its best efforts to collect any sum payable thereunder whenever by the terms of such policy or policies, the same shall be payableto the Trustee and it shall have knowledge thereof.

**Article 9**. <u>Distributions by Trustee: Limitation on Exercise of Special Power of Appointment</u>: The Trustee is authorized to make payments of principal or income

directly to and otherwise to deal with minors as though of full age or to make such payments for the benefit of such minor, or to the parent or person having custody of the minor for his or her use, all as the Trustee may designate. No grantee or holder of any special power of appointment granted under the Trust shall have the right or power to exercise such special power in any manner that can satisfy any legal obligation of such grantee, or holder, including, but not limited to, any legal obligation of support.

**Article 10**. Accounting: Unless directed otherwise by an adult Beneficiary of the Trust, the Trustee may accept such amount of property distributed to it by the legal representative of the Grantor's estate as constituting all the property to which the Trustee is entitled under the Grantor's Will. The Trustee shall have no duty to review the administration of the Grantor's estate by such legal representative, unless the Trustee has actual affirmative knowledge of any impropriety in such administration.

At any time during or after the Trust's existence a Beneficiary may request an accounting of the property in the Trust which may or may not include income, liabilities, and a list of assets known to be in the Trust's possession. Requests may not be made more than once per year.

**Article 11**. Spendthrift Provisions: The interest of any Beneficiary in any share or part of the Trust, both principal and income, shall not be alienable, assignable, attachable, transferable nor paid by way of anticipation, nor in compliance with any order, assignment or covenant and shall not be applied to, or held liable for, any of his or her debts or obligations either in law or equity and shall not in any event pass to his or her assignee or trustee under any instrument nor under any insolvency or bankruptcy law, and shall not be subject to the interference or control of creditors, spouses or others.

Nothing contained in this Article shall be construed as restricting in any way the exercise of any power of appointment granted herein.

**Article 12**. <u>Dealings With Third Parties</u>: Any person, firm, corporation or entity dealing with the Trustee may always, rely upon the Trustee, as being duly authorized hereunder in all particulars; and no such person, firm, corporation or entity shall in any way be responsible for the proper use or application of any property delivered, or any funds paid over or advanced, by any of them to the Trustee; and the receipt of the Trustee for any payment or advancement made to the Trustee, or for any property delivered to the Trustee, shall be a complete discharge and acquaintance to the extent specified in suchreceipt. Persons dealing with the Trustee shall look only to the property administered bythe Trustee for payment of claims and not to the Trustee's personal property.

**Article 13**. <u>Successor Trustees and Other Provisions Dealing with Trustees</u>:

A. <u>Successor Trustee</u>: The Grantor appoints **Natalie Ayvazyan** as the Successor Trustee and if he or she shall be unable to fulfill the duties herein, the Grantor appoints **Angelina Ayvazyan**.

In the event neither is able to serve then the Beneficiaries may decide with a majority vote the corporate or individual to serve as Successor Trustee. If the Beneficiaries cannot agree to a Successor Trustee within 30 days then the court in the jurisdiction of the Grantor shall make the appointment. If a Beneficiary of the Trust is to be appointed as Trustee, legal or tax counsel should first be consulted with respect to any possible income, gift or estate tax consequences to such Beneficiary under then existing law. Notwithstanding the foregoing, as long as one Trustee is serving hereunder no vacancy shall be deemed to exist in the office of

Trustee.

B. <u>Appointment of Co-Trustee by an Individual Trustee</u>: Any individual who is serving as a Trustee may at any time appoint another person or a corporate Trustee to serve as a co-Trustee but only during the period of time that such individual is serving as a Trustee. The Trustee has the right to remove such co-Trustee from such office, with or without cause, upon written notice thereof mailed or delivered to such appointed co-Trustee.

C. <u>Removal or Incapacity</u>: During the Grantor's lifetime, he or she shall have the right to remove any Trustee. Should any Trustee hereunder become incapacitated, as determined pursuant to the Indenture or otherwise, such person shall cease to serve as Trustee and the office of Trustee shall be deemed vacant if no other Trustee is then serving.

D. <u>Resignation of Trustee</u>: Any Trustee hereunder may resign by a notice in writing delivered to the Grantor, if the Grantor is then living, and, after the Grantor's death, to all current Beneficiaries of the Trust.

E. <u>Certified Copies and Certificate of Trustee or Attorney at Law</u>: Anyone may rely upon a copy hereof certified by a Notary Public to be a true copy of the instrument

F. <u>Trustee's Accountings</u>: The Trustee, other than the Grantor-Trustee, may, and, upon request of any Beneficiary hereof, shall, render periodic accounts with respect to the trusts hereunder to the person or persons then entitled to receive any income or principal from the Trust.

G. <u>Bond</u>: The Grantor directs that no Trustee hereunder be required to furnish bond,

or surety on any bond, for the performance of its duties as Trustee in any jurisdiction.

H. <u>Successor Trustees or Co-Trustees</u>: All rights, powers and exemptions reserved or granted to the Trustee hereunder shall extend to any successor Trustee or co-Trustee. No successor Trustee or co-Trustee shall succeed to such office until he/she/it accepts such office in writing. Any successor Trustee or co-Trustee may accept, without examination or review, the accounts rendered and the property delivered by any predecessor Trustee or present co-Trustee without liability. Each successor Trustee or co-Trustee has the same title, power and duties as the Trustee succeeded or, in the case of a co-Trustee, the other then present Trustee, without any additional conveyance. Any reference to a "Trustee" refers equally to any successor Trustee or co-Trustee.

I. <u>Compensation of Trustee</u>: Any individual Trustee serving hereunder shall beentitled to: (Choose One)

X - No compensation whatsoever.

☐ - Be paid a reasonable fee from the Trust Estate based on the amount of time expended by such Trustee in carrying out his or her duties hereunder. Any corporate Trustee shall be entitled to be paid a fee based upon its fee schedule from time to time that is required to be published.

J. <u>Liability of an Individual Trustee</u>: No individual Trustee (as opposed to a corporate Trustee) shall, with respect to the investment of Trust Estate, be liable for any action taken, or failure to act, unless such action, or failure to act, was done willfully and in

bad faith or fraudulently.

K. Corporate Trustee: The term "corporate Trustee" shall mean a Trustee which is a banking institution or trust company regularly engaged in the business of trust administration in which no Beneficiary has any controlling interest.

**Article 14**. Governing Law: The Trust is made and executed in the State of California and is to be governed and construed according to the laws of said State.

**Article 15**. Survival: No individual or organization may make a claim or benefit from theTrust unless it is determined that the benefiting party has survived the Grantor by _ days.

**Article 16**. Incapacity: If the Grantor becomes incapacitated, the Trustee shall distribute such amounts of the income and principal of the Trust for the comfort, health, support, maintenance and any additional care needed. Trustee has discretion to determine what amount is appropriate and necessary to maintain the Grantor's accustomed standard of living. Incapacity shall be defined as a lack of ability to manage his or her own personal and financial affairs, which may be due either to a mental or physical condition. The determination of incapacity shall be made by either a court of competent jurisdiction or two physicians licensed to practice medicine in the state where the Grantor is domiciled at the time of the certification. One of the two physicians shall be board certified in the specialty most closely associated with the cause of the Grantor's incapacity.

The Grantor shall be deemed to have regained capacity if there is a finding to that effect by a court of competent jurisdiction or two licensed physicians that the Grantor is capable of managing his or her personal and financial affairs.

**Article 17**. <u>Order of Death</u>: At the time of the Trust's creation the Grantor: (Choose One)

    X- Is Not Married

    ☐ - Is Married with the spouse known as_____(referred to as the "Grantor's Spouse") and therefore if their death occurs where it cannot bedetermined whether who died first, the Grantor or the Grantor's Spouse, then theproperty and assets shall be transferred as follows:

(Check One)

    ☐ - Grantor Dies First – The Grantor shall be determined as the individual that died first with the estate of the Grantor's Spouse able to claim any and all property, life insurance claims, and any other property in the same right as if the Grantor's Spouse survived the Grantor.

    ☐ - Grantor Dies Second – The Grantor shall be determined as the individual that died second with the estate of the Grantor's Spouse not able to claim any property, life insurance claims, or any other property in the same right as if the Grantor's Spouse predeceased the Grantor.

**Article 18**. <u>Children</u>: For the purposes of the Trust the children of the Grantor are as follows:

_____N/A_____.

**Article 19**. <u>Severability</u>: If any wording, sentence, or article of the Trust is determined to be invalid, unenforceable, or irrelevant for any reason whatsoever the remaining

portions of the Trust remain legally valid and enforceable. If a court determines that limiting any such wording in the Trust would enable to become valid and enforceable then such wording shall be deemed written, construed, and enforced as so limited.

**Article 20**. <u>Gender References</u>: Whenever the context permits, the use of a particular gender shall include any other gender, and references to the singular or the plural shall be interchangeable.

**Article 21**. Exclusion: For the purpose of outlining a clear and detailed Trust document the Grantor has specifically excluded the following individuals and/or organizations:

_____N/A_____

**Article 22**. <u>Power to Alter, Amend or Revoke</u>: The Grantor reserves the right at any time or times during the Grantor's lifetime to amend, alter or revoke the Trust, in whole or in part, or any provision thereof, by an instrument in writing signed by the Grantor and delivered to the Trustee, provided that no such amendment or alteration shall in any manner increase the duties and responsibilities of any then Trustee in office without such Trustee's consent. From and after the Grantor's death the Trust shall be irrevocable and may not be altered, amended or revoked.

**Grantor's Signature** _____

Print Name NAZIK TUNYAN _____Date __9-25-2019__

I hereby accept the Trust hereinabove created upon the terms set forth herein and agrees to act as Trustee thereunder.

**Trustee's Signature** _____

Print Name  G E G H E T S I K  G E V O R G Y A N  _____Date _9-25-2014_

I hereby accept the Trust hereinabove created upon the terms set forth herein and

agrees to act as Successor Trustee thereunder.

**Successor Trustee's Signature** _Natali_

Print Name  NATALIE AYVAZYAN_____Date _9-25-2014_

# SELF-PROVING AFFIDAVIT

State of_____CA_____}

County of_Los Angeles._____}

I/We, the Grantor, Trustee(s) and Successor Trustee(s) and/or Notary Public, whose names are signed to the foregoing instrument, being first duly sworn, do hereby declareto the undersigned authority that the Grantor signed and executed the instrument as his/her Living Trust and that he/she signed willingly, and that he/she executed it as his/her free and voluntary act for the purposes therein expressed, and that each of the individuals, in the presence of the Grantor was at the time eighteen (18) or more years of age, of sound mind and under no constraint or undue influence.

Grantor's Signature_____Date _5-25-2014_

Trustee's Signature_____Date _9-25-2014_

Successor Trustee's Signature_____Date _9-25-2014_

# ATTACHMENT A

Under this Living Trust the Grantor has conveyed, transferred, or assigned to the Trustee the following assets and property to be managed and held under the terms of aforementioned:

**17450 Weddington Street, Encino CA 91316**

# EXHIBIT 2



**This page is part of your document - DO NOT DISCARD**



## 20201017939



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/28/20 AT 08:00AM**

**Pages:
0005**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



**202008280160031**

**00018798242**



**011113732**

**SEQ:
01**

**SECURE – 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

**FSSE-3021900602**

USAO_WEDDINGTON_000182

**RECORDING REQUESTED BY:**
Fidelity National Title Company

**When Recorded Mail Document
and Tax Statement To:**
Geghetsik Gevorgyan
17450 Weddington Street
Encino, CA 91316

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Escrow Order No.:** FSSE-3021900562

Exempt from fee per GC 27388.1 (a) (2); recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.

Property Address:  17450 Weddington Street,
Encino, CA 91316
APN/Parcel ID(s): 2257-001-009

## GRANT DEED

**The undersigned grantor(s) declare(s)**  *This conveyance transfers an interest into or out of a living trust R+T 11930*

☑ This transfer is exempt from the documentary transfer tax.
☒ **The documentary transfer tax is $____0____** and is computed on:
  ☐ the full value of the interest or property conveyed.
  ☐ the full value less the liens or encumbrances remaining thereon at the time of sale.
The property is located in ☒ the **City of Encino**.

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** Geghetsik Gevorgyan, Trustee of The Nazik Tunyan Family Trust Dated September 25, 2014,

**hereby GRANT(S) to** Geghetsik Gevorgyan, a single woman

**the following described real property in the** City of Encino, County of Los Angeles, State of California:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**PROPERTY COMMONLY KNOWN AS:** 17450 Weddington Street, Encino, CA 91316

Dated: August 18, 2020

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____
Geghetsik Gevorgyan, *Trustee*
*The Nazik Tunyan Family Trust*

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Grant Deed Out of/In to Trust w/ PCOR
SCA0002378.doc / Updated: 04.08.20

Printed: 08.18.20 @ 06:15 PM
CA-FT-FSSE-01500.080302-FSSE-3021900562

USAO_WEDDINGTON_000183

# GRANT DEED

(continued)

APN/Parcel ID(s):  2257-001-009

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____CA_____

County of _____Los Angeles_____

On _8-19-20_____ before me, _Roy Dubos_____, Notary Public,
(Here insert name and title of the officer)

personally appeared _Geghetsik Gevorgyan,_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

> **ROY DUBOS**
> Notary Public - California
> Los Angeles County
> Commission # 2226624
> My Comm. Expires Jan 21,2022

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

# NOTARY VERIFICATION

## ILLEGIBLE NOTARY SEAL DECLARATION
### (GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:  ROY DUBOS

Commission Number:  2226624

State:  CALIFORNIA

County:  LOS ANGELES

Date Commission expires:  JANUARY 21, 2022

Place of execution of this Declaration:  **CONCORD, CA**

Date:  8/27/2020

By: Victor R. Bell/Chicago Title/Fidelity National Title Company

# EXHIBIT 3

**This page is part of your document - DO NOT DISCARD**



## 20201017941



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/28/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



**202008280160031**

**00018798244**



**011113732**

**SEQ:**
**03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

**FSSE-3021900** 

USAO_WEDDINGTON_000187

This instrument is filed for record by Fidelity National Title Company as an Accommodation only. It has not been examined as to its execution or as to its effect on the Title.

**RECORDING REQUESTED BY:**
Fidelity National Title Company

**When Recorded Mail Document
and Tax Statement To:**
Geghetsik Gevorgyan
17450 Weddington Street
Encino, CA 91316

**Escrow Order No.:** FSSE-3021900562

Property Address: 17450 Weddington Street,
Encino, CA 91316

APN/Parcel ID(s): 2257-001-009

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Exempt from fee per GC 27388.1 (a) (2); recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.

## GRANT DEED

**The undersigned grantor(s) declare(s)**   *This conveyance transfers an interest into or out of a living trust R+T 11930*

☑ This transfer is exempt from the documentary transfer tax.
☑ The documentary transfer tax is $_____0_____ and is computed on:
    ☐ the full value of the interest or property conveyed.
    ☐ the full value less the liens or encumbrances remaining thereon at the time of sale.
The property is located in ☑ the **City of Encino**.

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged**, Geghetsik Gevorgyan, a single woman,

**hereby GRANT(S) to** Geghetsik Gevorgyan, Trustee of The Nazik Tunyan Family Trust Dated September 25, 2014

**the following described real property in the** City of Encino, County of Los Angeles, State of California:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**PROPERTY COMMONLY KNOWN AS:** 17450 Weddington Street, Encino, CA 91316

Dated: August 18, 2020

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____
Geghetsik Gevorgyan

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Grant Deed Out of/In to Trust w/ PCOR
SCA0002378.doc / Updated: 04.08.20

Printed: 08.18.20 @ 06:15 PM
CA-FT-FSSE-01500.080302-FSSE-3021900562

USAO_WEDDINGTON_000188

## GRANT DEED
### (continued)

APN/Parcel ID(s):  2257-001-009

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ *CA* _____

County of _____ *Los Angeles* _____

On _____ *8-19-20* _____ before me, _____ *Roy Dubos* _____, Notary Public (here insert name and title of the officer), personally appeared Geghetsik Gevorgyan, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> **ROY DUBOS**
> Notary Public - California
> Los Angeles County
> Commission # 2226624
> My Comm. Expires Jan 21, 2022

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Grant Deed Out of/In to Trust w/ PCOR
SCA0002378.doc / Updated:  04.08.20

Printed:  08.18.20 @ 06:15 PM
CA-FT-FSSE-01500.080302-FSSE-3021900562

# NOTARY VERIFICATION

# ILLEGIBLE NOTARY SEAL DECLARATION
## (GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:  ROY DUBOS

Commission Number:  2226624

State:  CALIFORNIA

County:  LOS ANGELES

Date Commission expires:  JANUARY 21, 2022

Place of execution of this Declaration:  **CONCORD, CA**

Date:  8/27/2020

By: Victor R. Bell   Chicago Title/Fidelity National Title Company

USAO_WEDDINGTON_000190

# EXHIBIT "A"
## Legal Description

**For APN/Parcel ID(s): 2267-001-009**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES AREA OF ENCINO, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 13 Block 17, of Tract No. 2955, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 31 Page(s) 62 et seq. in the office of the County Recorder of said county, described as follows:

Beginning at the Southwesterly corner of said Lot 13; thence along the Southerly line of said Lot, South 89° 44' 43" East 100.00 feet; thence Parallel with the Westerly line of said, Lot, North 0° 04' 00" feet, more or less, to the Southerly line of the Northerly 195.00 feet of said Lot 13; thence along said parallel line North 89° 44' 43" West 84.92 feet to the beginning of a to the beginning of a tangent curve concave Southeasterly, having a radius of 15.00 feet, said curve also being tangent at its Westerly terminus to the Westerly line of said Lot 13;  thence Southwesterly along said curve, an arc distance of 23.56 feet to said Westerly line; thence along said Westerly line, South 0° 04' 00" East 119.96 feet to the point of beginning.

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

# EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**



## 20201017940



**Pages:
0020**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/28/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 81.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 81.00 |



**L E A D S H E E T**



**202008280160031**

**00018798243**



**011113732**

**SEQ:
02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460070*

FSSE-302190~~~~

USAO_WEDDINGTON_000192

**RECORDING REQUESTED BY:**
Fidelity National Title Company


**When Recorded Mail Document and Tax Statement To:**
Recovco Mortgage Management, LLC
90 MERRICK AVE SUITE 430
EAST MEADOW, NY 11554

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Exempt from fee per GC 27388.1 (a) (2); recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.

DEED OF TRUST

USAO_WEDDINGTON_000193

When recorded, mail to:
**Recovco Mortgage Management, LLC**
**90 Merrick Ave**
**Suite #430**
**East Meadow, NY 11554**

**Escrow No.: FSSE-3021900562**
**LOAN #: 2006036891**

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

| MIN 1009718-0000035007-0 |
| --- |
| **MERS PHONE #: 1-888-679-6377** |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **August 19, 2020,** together with all Riders to this document.
**(B) "Borrower"** is **GEGHETSIK GEVORGYAN, A SINGLE WOMAN.**

Borrower's address is **17450 WEDDINGTON ST, Encino, CA 91316.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Recovco Mortgage Management, LLC.**

Lender is **a Limited Liability Corporation,** organized and existing under the laws of **Delaware.** Lender's address is **4600 Fuller Drive, Suite 300,** **Irving, TX 75038.**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc.                                                        Page 1 of 13

Initials: _*G G*_
CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST

USAO_WEDDINGTON_000194

LOAN #: 2006036891

(D) **"Trustee"** is   **FIDELITY NATIONAL TITLE COMPANY.**


(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **August 19, 2020.**              The Note states that Borrower owes Lender **ONE MILLION EIGHT HUNDRED SEVENTY FIVE THOUSAND AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *** Dollars (U.S. **$1,875,000.00**              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2050.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider


(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                       Page 2 of 13                        Initials: _GG_
                                                                                      CAEDEDL   0219
                                                                                      CAEDEDL (CLS)
                                                                                      08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000195

LOAN #: 2006036891

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Los Angeles** [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 2257-001-009**

which currently has the address of   **17450 WEDDINGTON STREET, ENCINO,**

[Street] [City]

California **91316**          ("Property Address"):
    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01   Initials: _G. G._
Ellie Mae, Inc.                                Page 3 of 13                        CAEDEDL   0219
                                                                                   CAEDEDL (CLS)
                                                                                   08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000196

LOAN #: 2006036891

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                     Page 4 of 13

Initials: _G G_

CAEDEDL  0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST



**LOAN #: 2006036891**

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.

Initials: _GG_

CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000198

LOAN #: 2006036891

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

Initials: _GG_

CAEDEDL  0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST

USAO_WEDDINGTON_000199

**LOAN #: 2006036891**

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

Initials: _GG_

CAEDEDL  0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000200

**LOAN #: 2006036891**

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                 Page 8 of 13

Initials: _GG_

CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST

LOAN #: 2006036891

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                                        Page 9 of 13

Initials: _GG_____

CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000202

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                    Page 10 of 13

Initials: _6G_

CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000203

**LOAN #: 2006036891**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3005 1/01
Ellie Mae, Inc.                                   Page 11 of 13

Initials: _GG_____

CAEDEDL   0219
CAEDEDL (CLS)
08/18/2020 11:10 AM PST

USAO_WEDDINGTON_000204

**LOAN #: 2006036891**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
**GEGHETSIK GEVORGYAN**                                      **DATE**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

**State of CALIFORNIA**
**County of LOS ANGELES**

On _8 · 19 · 20_____, before me, _Roy Dubos, a notary public_ (here insert name and title of the officer), personally appeared **GEGHETSIK GEVORGYAN**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Roy Dubos_____

_Roy Dubos_____ (NOTARY)

(SEAL)

```
ROY DUBOS
Notary Public - California
Los Angeles County
Commission # 2226624
My Comm. Expires Jan 21, 2022
```

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
Ellie Mae, Inc.                        Page 12 of 13                        Initials: _G.G_
                                                                           CAEDEDL  0219
                                                                           CAEDEDL (CLS)
                                                                           08/18/2020 11:10 AM PST



USAO_WEDDINGTON_000205

# NOTARY VERIFICATION

## ILLEGIBLE NOTARY SEAL DECLARATION
(GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:   ROY DUBOS

Commission Number:  2226624

State:   CALIFORNIA

County:  LOS ANGELES

Date Commission expires:  JANUARY 21, 2022

Place of execution of this Declaration:  **CONCORD, CA**

Date:  8/27/2020

By: Victor R. Bell  Chicago Title/Fidelity National Title Company

USAO_WEDDINGTON_000206