UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

Proceedings:   ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE CLAIMANT NAZIK FAMILY TRUST [31]

## I.   Introduction

Before the Court is the government's motion to strike the claim of the Nazik Tunyan Family Trust ("the Trust"). ECF No. 31.

For the forthcoming reasons, the motion is GRANTED.

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

### II. Factual and Procedural Background

This case arises from the criminal proceeding *United States v. Ayvazyan*. Briefly, in that case, numerous defendants, including Tamara Dadyan ("Dadyan" or "Tamara"), were indicted in connection with their use of synthetic identities used to fraudulently obtain $21 million in COVID-19 relief funds. *See generally* Case No. 2:20-cr-005679, Indictment, ECF No. 1 (indicting Dadyan on twenty-one counts including charges for bank fraud, wire fraud, conspiracy to commit bank and wire fraud, aggravated identity theft, and money laundering). Dadyan pled guilty and was subsequently sentenced to 10 years and 10 months of imprisonment. ECF Nos. 1202, 998, 1152, 1193.

Now, the government seeks to forfeit a property allegedly connected to Dadyan. As detailed in the Complaint, the government traced approximately $30,000 in mortgage payments on a Los Angeles property to the fraud. Complaint, ECF No. 1 ("Compl.") at ¶¶ 31-33. The claimants to the property are the Nazik Tunyan Family Trust (Dkt. 11) and JP Morgan Chase Bank, N.A. (Dkt. 16).

More specifically, the property (hereinafter the "Weddington Property" or "the property") is a residence located in the Encino neighborhood of Los Angeles, California. Beginning in 2005, the Weddington Property was owned jointly by Dadyan and her mother, Greta Akopyan ("Akopyan" or "Greta"). Akopyan is Nazik Tunyan's daughter.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

According to the Trust's interrogatory responses, on September 9, 2016, the Weddington Property was transferred from Dadyan and Akopyan to the Nazik Tunyan Family Trust (the "Trust"), identifying the Trust's trustee as Nazik Tunyan. According to the Trust, its trustee was Geghetsik Gevorgyan ("Gevorgyan") from September 25, 2014, when the trust was created, until August 21, 2022. On August 22, 2022, Akopyan became trustee.

These interrogatory responses conflict with the public record. According to the public record, Gevorgyan became the trustee in June 2019. Ex. 2, at 31. And according to the public record, the Weddington Property was transferred from Dadyan and Akopyan on August 28, 2020.

There is currently one mortgage on the Weddington Property, held by claimant JP Morgan Chase Bank ("Chase") as successor to Recovco, in the amount of $1,875,000. *See* Ex. 1, at 5; *see also* ECF No. 16. Chase is an additional claimant in this action. The mortgage application was filed on August 19, 2020, one day after the Weddington Property was transferred from the Trust to Gevorgyan, who filed the application and apparently identified herself as the borrower. The Weddington Property was then transferred back to the Trust on the same day, August 18, 2020.

The government filed its complaint on July 20, 2022. *See* ECF No. 1. Notice was provided to all potentially interested parties, including through service on Akopyan at the Weddington Property on July 29, 2022. *See* ECF No. 10.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

The government then moved to strike the claims of the Trust. The Trust opposed the motion. ECF No. 32. The government filed its reply on November 21, 2022. ECF No. 34. The Court held evidentiary hearings on January 10, 2023 and March 20, 2023, and took the motion under submission.

### III.    Legal Standard: Motion to Strike Claims in In Rem Civil Forfeiture Actions

Here, "the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene [ ]" as claimants. *United States v. One-Sixth Share of James J. Bulger*, 326 F.3d 36, 40 (1st Cir. 2003).

To contest a forfeiture, a claimant must demonstrate both statutory and Article III standing. *United States v. $1,181,895.00 in U.S. Currency*, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015). In general, under Article III of the U.S. Constitution, a plaintiff must have standing to sue in federal court. To have standing, a plaintiff must show (1) an injury that is concrete and particularized, and not conjectural or hypothetical; in other words, that a harm is imminent and not manufactured by the litigant; (2) causation between the plaintiff's claim and the defendant's conduct such that the injury is fairly traceable to the defendant; and (3) that the injury can be redressed by the federal court. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

In civil forfeiture proceedings, "[a] claimant bears the burden of establishing Article III standing, the threshold function of which is to ensure that the government is put to its proof only where someone acting with a legitimate interest contests the forfeiture.... A claimant must

|                        |     |
|------------------------|-----|
| Initials of Preparer   | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

therefore demonstrate that he has a sufficient interest in the property to create a case or controversy." *United States v. $41,471.00 in U.S. Currency*, 2016 WL 337380, at *1 (C.D. Cal. Jan. 6, 2016). This burden is by the preponderance of the evidence.

Standing to challenge a civil forfeiture proceeding is satisfied if the claimant can show "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008). But "bare legal title without dominion or control of the property is not enough" if the claimant is not moving to dismiss the government's complaint. *United States v. Approximately $417,148.06 in U.S. Currency Seized From Bank of Am. Acct. No. 08067-05302*, 72 F. App'x 624, 625 (9th Cir. 2003).

### IV. Discussion

Here, the government asserts that the Trust lacks Article III standing because it is a sham financial instrument that is really controlled by Tamara Dadyan. The Trust asserts that it has standing because it is not simply a front for Dadyan's criminal activities, the requirements to establish a trust under California law were met, and that there is a legitimate minor beneficiary who has an interest in the Weddington Property.

1. **Background – Application of the "Dominion and Control" Test**

The Ninth Circuit, looking to precedent from the Eighth and Eleventh Circuits, first articulated the rule that the claimant in a forfeiture action has the burden of showing he owns or has an interest in the forfeited property in *United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island & Cnty. of Kauai, State of Hawaii,*

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

902 F.2d 1443 (9th Cir. 1990). There, the court held that the claimant, who held legal title to real property, was a nominal owner—and therefore lacked standing—because he "presented no documentary evidence regarding his finances or payments with respect to the purchase of the property. He could not remember how much he had contributed, or the amounts that others had loaned to him. [He] claim[ed] that he paid property taxes on the land for at least two years but has no record or writing to support this claim." *Id.* at 1444.

The Ninth Circuit again visited the question of whether real property owners holding legal title had standing to challenge forfeiture in *United States v. Vacant Land Located at 10th St. & Challenger Way in Palmdale, Cal.*, 15 F.3d 128, 130 (9th Cir. 1993). There, the court held that Claimant was nominal owner and lacked standing because "Not a jot or tittle of dominion and control was alleged by [the claimant] in his declaration, which, at the most, asserted that he had 'a right' to dominion and control and which, at the most, indicated that he had assumed responsibility for payments without any indication that he had made any payments." *Id.*

Likewise, in *United States v. Approximately $417,148.06 in U.S. Currency Seized From Bank of Am. Acct. No. 08067-05302*, the court addressed explicitly sham trusts. The Ninth Circuit affirmed the lower courts' holding that the trusts were shams and therefore lacked standing to challenge the forfeiture at issue. The Court held:

> The Trusts, however, were merely sham structures by which Simmons controlled the funds in order to evade taxes. They were not created for the benefit of any third person, but solely for the benefit of Simmons himself. For example, the named settlor of the Viking Trust was unaware of its existence, and the corpus of the trust was used to purchase assets for Simmons. The Newport Coast Trust transferred its major asset to

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

Simmons without consideration. As the district court noted, Simmons conceded that the Trusts were shams or alter egos for tax purposes.

*United States v. Approximately $417,148.06 in U.S. Currency Seized From Bank of Am. Acct. No. 08067-05302*, 72 F. App'x 624, 625 (9th Cir. 2003).[1]

On the other hand, in *United States v. Nava*, the Court declined to find that a claimant was merely a nominal owner, albeit in the context of a criminal forfeiture action, not a civil forfeiture action, as here.[2] *United States v. Nava*, 404 F.3d 1119, 1136–37 (9th Cir. 2005). There,

---

[1] The Court notes Judge Kleinfeld's dissent. He reasoned:

> Nevertheless, the trustee, as such, has standing (and a duty) to litigate on behalf of the beneficiaries. Though Simmons's purpose was to defraud the government of taxes owed, nevertheless he used unchallenged trust language to create a trust for designated beneficiaries (his children and grandchildren apparently), and deposited a res. It's their money now. "Where the purpose of the settlor in creating the trust is to defraud creditors or other persons, but the trust is created for the benefit of a third person and not for the benefit of the settlor himself, if the beneficiary at the time of the creation of the trust had no notice of the fraudulent purpose of the settlor, he can enforce the trust, provided that the trust is not illegal for any other reason." The beneficiaries here have an interest in the money remaining in trust beyond Simmons's obligation to the government and Simmons, as trustee, has a duty to represent their interest.

*Id.* at 626. Though the Court is, again, mindful of the policy considerations expressed here, as discussed further below, the use of a synthetic identity as the purportedly original trustee of the Trust here outweighs these considerations.

[2] "[A] civil forfeiture is an *in rem* proceeding in which liability attaches to a particular property and not particular institutions or individuals." *United States v. Lester*, 85 F.3d 1409, 1414 n. 8 (9th Cir.1996). "In contrast, criminal forfeiture provisions operate *in personam* against the assets of the defendant and serve as part of the penalty for the

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

the Ninth Circuit held that a claimant who held title to the property at issue was not a nominal owner because the claimant had dominion and control over the property. *Id.* at 1130. More specifically, the claimant, in addition to holding record title, also resided on the property, transferred title, and took out a second mortgage. *Id.* at 1131.

The property was not subject to forfeiture even though, at trial, a federal probation officer testified that "[The claimant] told him that [the criminal defendant] either gave to her or sold her the residence." *Id.* The criminal defendant had conveyed the properties to the claimant through a gift deed for one dollar. *Id.* at 1135. Additionally, the criminal defendant had made some tax payments and possibly conducted both "lawful and unlawful" activities on the property. *Id.* Still, he "did not live there and did not control the property." *Id.*

### 2. California Probate Law – Trust Formation

In civil forfeiture actions, courts apply federal forfeiture law, but refer to the property law of the state where the property is located: in other words, "[s]tate law determines whether Claimants have a property interest, but federal law determines whether or not that interest can be forfeited." *Hooper,* 229 F.3d at 820.

Under California law, the following elements are required to create a trust: (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary. *Keitel v. Heubel,* 103 Cal. App. 4th 324, 337 (2002). But "the question of bare legal title is a matter of federal law." *Nava,* 404 F.3d at 1127.

---

defendant's conviction." *Nava,* 404 F.3d at 1124. Nevertheless, in both types of forfeiture cases, courts must ascertain the ownership interests of the claimants.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

### 3. The Trust Has Not Shown By a Preponderance of the Evidence That It Has Actual Dominion and Control Over the Property

For the forthcoming reasons, the Trust lacks standing to challenge the government's forfeiture. The parties seem to disagree about the extent to which the Trust's standing depends upon it meeting all the elements for valid trust formation under California law. The government's argument does not rely on California trust law, but instead argues that the Trust is a front for Tamara Dadyan and was created to hide her assets and criminal activities. The Trust contends that it should have standing because it meets the requirements of trust formation.[3]

But regardless of whether the Court must assess whether the Trust is a front for Tamara Dadyan's criminal activities or whether the Court must also consider whether the Trust was validly created under California law, the Trust lacks standing. If the Trust does not legitimately exist, it cannot exert dominion and control over the property. But even if the Trust met all the requirements for trust formation, it could still be a sham trust that lacks standing to challenge a forfeiture. *See* Opp'n, Ex. A; *see also* 72 F. App'x 624 at 625 (affirming a holding that a legitimately-created trust lacked standing where it was created to evade taxes).

---

[3] At the March 20, 2023 evidentiary hearing, the Trust's counsel seemed to suggest that the Trust had been found valid in California probate court, so it should have standing here. Transcript 17:6-9 ("I will argue this . . . The Probate Court of California defines a valid trust. This is a valid trust under the Probate Code of California."). But the question of whether the Trust was found valid by a probate court is separate from the issue of standing. As discussed above, for instance, in *Approximately $417,148.06 in U.S. Currency Seized From Bank of Am. Acct. No. 08067-05302*, even an apparently legitimately-created trust with real beneficiaries—as is the situation here, as Tamara Dadyan's daughter is the Trust beneficiary—may lack standing to challenge a civil forfeiture. *See id.* And besides, here, this was merely argument with no accompanying evidence.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

Here, the Trust lacks standing. This is so for the following reasons:

First, the Trust and mortgage are purportedly signed by Geghetsik Gevorgyan. But the government discovered that Gevorgyan is actually an identity theft victim who was never truly the Trust's trustee.[4] Declaration of Geghetsik Gevorgyan, ECF No. 53-1 ("Gevorgyan Decl."), at ¶¶ 4-6. Gevorgyan's interview, conducted in Armenian, revealed that Gevorgyan had never been a trustee of any trust, indicating she did not even know what that would entail, and had never owned property or taken out a mortgage.

Though the claimant points out that a trustee is not required for a trust to exist, the fact that the Trust document lists Gevorgyan as the original trustee suggests that the Trust document itself was forged and therefore was created for some illegitimate purpose. Otherwise, Nazik Tunyan—if she truly intended to create a trust—surely would have chosen a legitimate trustee. This inference is underscored by the fact that Gevorgyan's identity was used to obtain a mortgage from JP Morgan Chase.

Testimony at the March 20, 2023 evidentiary hearing, indeed, cast doubt on whether Tunyan truly had the intent to create a trust. Akopyan, Tunyan's daughter, testified that Tunyan had no property in the United States and that Akopyan had received not received any inheritance from Tunyan. Transcript 11:18-21. Akopyan also testified that Tunyan had lived both at the

---

[4] It is interesting to note—though the Court bases none of its analysis upon this observation--that Tamara Dadyan was also indicted in California state court in May 2021 for a fraud the state court indictment alleges began in May 2015. There is therefore a close temporal connection between this alleged conspiracy and the Trust document, if it was indeed actually created in 2014. *LAPD Announces Arrests for a $15 Million Mortgage Fraud*, May 6, 2021, https://www.lapdonline.org/newsroom/lapd-announces-arrests-for-a-15-million-mortgage-fraud-nr21125wc/.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

Weddington Property and another home, but ultimately moved to and passed away in Armenia. If Tunyan had no property, Tunyan would have had no reason to create a family trust.

Second, relatedly, it is unclear from the record before the Court that there was trust property at the time of its creation. The Trust document, purportedly dated September 2014, shows as its only property the Weddington Property. But the public record shows that Tamara and Greta jointly owned the Weddington Property before transferring it to the Trust. If the alleged settlor, Nazik Tunyan did not own it, it is unclear how Tunyan was able to put it into her trust. There is no evidence in the record that the property was ever transferred to her. And Greta Akopyan testified at the March 20, 2023 hearing that she did not know she was signing the grant deed purporting to show that the Weddington Property was transferred to the Trust in 2020. Transcript 4:11-5:7. There is no declaration from Tamara Dadyan in the record addressing the circumstances of the alleged conveyance. Furthermore, there is no declaration from Tamara as to any aspect of this dispute.

The circumstances in which the Weddington Property was transferred to the Trust is significant: it shows that there is a lack of evidence in the record before the Court that there was truly any property in the Trust at the time of its alleged creation in 2014, thus failing one of the requirements for Trust formation in California. And it further shows that one of the Weddington Property's original owners—Greta—did not really consent to the home being placed into the Trust, raising issues as to the validity of the conveyance, even assuming the Trust's creation was otherwise legitimate.

Third, the current trustee has failed to authenticate the Trust document. As the government points out, her declaration does not avow that the attached Trust document is true

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-04950-SVW-JPR | Date | March 30, 2023 |
|---|---|---|---|
| Title | *United States v. Real Property Located in Los Angeles, California* | | |

and correct. Gevorgyan, of course, could not authenticate it either, as she was never the true trustee. The Trust has therefore failed to meet its burden in showing that the Trust document is what it appears to be.

Here, the record before the Court shows that, by a preponderance of the evidence, the Trust is a sham and was merely a front for Tamara Dadyan's criminal activities. It therefore lacks standing to contest forfeiture. The government's motion to strike is accordingly GRANTED.

**V.     Conclusion**

For the foregoing reasons, the motion to strike the claim of the Trust is GRANTED. The claim at Dkt. 11 is STRICKEN.

As Claimant JP Morgan Chase has indicated at prior hearings in this matter that it does not oppose forfeiture, there are no claimants left to contest the forfeiture.

Still, one aspect of this forfeiture concerns the Court. The Complaint suggests that the government wishes to forfeit the entire property, despite only about $30,000 being traceable to mortgage fraud. Accordingly, the government is ordered to brief the issue of why this forfeiture does not violate the Eighth Amendment.

Plaintiff's brief shall be due within 21 days of the issuance of this Order.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |